LIU, J.,
Concurring. — The court properly rejects defendant’s claim that the prosecutor’s strike of Prospective Juror N.V. was motivated by discriminatory *256 intent. (See Batson v. Kentucky (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (Batson).) I reach this conclusion based on an independent review of the record; as explained below, deference to the trial court’s ruling is not appropriate in this case.
As today’s opinion explains, the prosecutor gave credible, race-neutral reasons for dismissing N.V. (Maj. opn., ante, at pp. 241-244.) However, in denying defendant’s Batson motion, the trial court relied not only on the prosecutor’s stated reasons but also on its own assumption that it was “suspicious” and “very odd” for a person of Vietnamese descent not to have taken a special interest in a murder case involving a Vietnamese defendant. Clearly, that type of explanation for striking prospective jurors, which is based on “assumptions . . . which arise solely from the jurors’ race,” would be impermissible if proffered by the prosecutor. (Batson, supra, 476 U.S. at p. 98; see, e.g., Kesser v. Cambra (9th Cir. 2006) 465 F.3d 351, 362 (en banc) (lead opn. of Bybee, J.) [Native American prospective juror who worked for her tribe could not be dismissed based on prosecutor’s assumption that such individuals are “more likely to ‘associate themselves with the culture and beliefs of the tribe’ ”].) This is the second time in the past year that we have decided a capital case where the trial court, in denying a Batson claim, voiced its own assumptions about a protected group. (See People v. Williams (2013) 56 Cal.4th 630, 652 [156 Cal.Rptr.3d 214, 299 P.3d 1185] (Williams) [in upholding prosecutor’s strikes against five black women, trial judge said that in her experience “ ‘[B]lack women are very reluctant to impose the death penalty; they find it very difficult no matter what it is.’ ”].) We cannot accord deference to Batson rulings informed by such impermissible generalizations. (See Williams, at p. 699 (dis. opn. of Werdegar, J.); id. at p. Ill (dis. opn. of Liu, J.).)
Here is the entirety of what the trial court said in analyzing the prosecutor’s reasons for striking N.V.: “Like another juror that [the prosecutor] excused, [N.V.] seemed to be very anxious to sit on this case. One thing that [the prosecutor] didn’t mention that I thought very odd was [N.V.] read about the case in the paper, and didn’t give it any thought. Which is very striking to me, he is Vietnamese, a little younger than Mr. Trinh, but single like Mr. Trinh. I’m not so sure, in fact there is no evidence that he is taking care of his mother or anything like that. I am concerned about excusing postal workers, that just once you start picking on occupations, I think we are all over the place.” “When [the prosecutor said that N.V. was] ‘nonresponsive,’ he was really just quick to give a yes or no answer to satisfy the question.” “And you [(the prosecutor)] questioned him quite a bit, he had no opinions about the death penalty. He did say no strong feelings for either penalty.” “I agree [with the prosecutor], I even went beyond not only that he was overly eager to serve, I just find that strange he didn’t take an interest in this case, very, very unusual. In the Lisa Peng case, that entire community was talking, *257 reading the paper, and on and on and on about the case. Maybe he is just unique. But if I were the prosecutor, I would be suspicious of a person who says no interest in the case after reading about it.”
The trial court’s mention of “the Lisa Peng case” appears to be a reference to the high-profile case of Lisa Peng, a Taiwanese woman living in Orange County who was tried three times for murdering her husband’s Chinese mistress and their infant son in 1993. (See Pfeifer & Morin, Jury Deadlocks in 3rd Double-Murder Trial, L.A. Times (June 19, 2001) p. B-l.)
Of the 24 lines of transcript comprising the trial court’s analysis quoted above, 15 are devoted to its observation that it was “very odd” and “suspicious” for N.V., a Vietnamese-American, not to take special interest in defendant’s case after reading about it in the newspaper. These assumptions were compounded by the trial court’s statement, unsupported by any evidence, that “that entire community” (presumably Chinese-Americans or Asian-Americans) “was talking, reading the paper, and on and on and on about the [Lisa Peng] case.” To his credit, the prosecutor immediately and clearly disavowed any reliance upon the trial court’s observations. But it is clear that these observations influenced the trial court’s assessment of the credibility of the prosecutor’s explanation that N.V.’s unresponsive views on the death penalty were suspect.
As today’s opinion holds, defendant did not carry his burden of showing that the prosecutor’s motives were based on N.V.’s race. But a “trial court’s Batson rulings are not entitled to deference on appeal” where, as here, the mling is informed by the trial court’s own assumptions about a particular racial or ethnic group. (Williams, supra, 56 Cal.4th at p. 717 (dis. opn. of Liu, 1); see Schuette v. BAMN (2014) 572 U.S._,_[188 L.Ed.2d 613, 134 S.Ct. 1623] (plur. opn. of Kennedy, J.) [“this Court has rejected the assumption that ‘members of the same racial group — regardless of their age, education, economic status, or the community in which they live — think alike ...’”].)
Appellant’s petition for a rehearing was denied July 23, 2014.